**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TOKIO MARINE SPECIALTY INSURANCE CMPANY, | ) ) ) ) | CASE NO. 5:20-cv-854 |
| PLAINTIFF, | ) ) | JUDGE SARA LIOI |
| vs. | ) ) ) ) | MEMORANDUM OPINION AND ORDER |
| SOUTH CHICAGO PROPERTY MANAGEMENT COMPANY, LTD., | ) ) ) | |
| DEFENDANT. | ) | |

Plaintiff Tokio Marine Specialty Insurance Company, Ltd. ("Tokio Marine") brought this action on April 21, 2020 against defendant South Chicago Property Management Company, Ltd. ("South Chicago") for declaratory judgment and reformation of contract concerning an insurance policy. (Doc. No. 1 ["Compl."] ¶ 3.)

Now pending before the Court is a motion to compel arbitration and dismiss or stay the action filed by South Chicago. (Doc. No. 5 & 5-1 [collectively, "Mot."].) South Chicago argues that Tokio Marine's claims are subject to an arbitration agreement. (*Id.* at 29.) Tokio Marine opposes the motion (Doc. No. 8 ["Opp'n"]), and South Chicago filed a reply (Doc. No. 9 ["Reply"]).

For the reasons that follow, South Chicago's motion to compel arbitration and dismiss the action is granted.

## I. BACKGROUND

South Chicago is an additional named insured under the Premises Environmental Coverage Policy Number PPK18453536 (the "Policy") entered into by Tokio Marine and Reserve Management Group. (Compl. ¶¶ 5, 6.) The Policy insures a piece of property South Chicago owns in Chicago (the "Property") for a coverage period of June 30, 2018 through June 30, 2010. (*Id.* ¶¶ 5, 7, 13.) The Policy includes an arbitration agreement that provides, in relevant part:

> Any dispute, disagreement, or controversy arises [sic] out of the formation, interpretation, alleged breach, termination, or invalidity of this policy, or as to any other issue regarding the respective duties and responsibilities of us or any **insured** regarding this policy, shall be resolved through binding arbitration. Except with respect to the selection of the arbitration panel, the arbitration will be conducted in accordance with the rules of the American Arbitration Association ("AAA") that are in effect as of the date a party first provides notice of its demand for arbitration to the other party in accordance with the policy's notice provisions.

(Doc. No. 5-2, Premises Environmental Coverage, Policy Number PPK1845336 ["Policy"] at 75[1] (emphasis in original).)

On November 8, 2019 South Chicago submitted a claim to Tokio Marine "for remediation of [] historical pollutants on the Property and related groundwater [the "Claim"]." (Compl. ¶ 18.) On February 11, 2020 Tokio Marine "determined that no coverage is available under the Policy for the Claim[]" and denied the claim. (*Id.* ¶¶ 8, 22.) "South Chicago [] challenged Tokio Marine's denial of coverage[.]" (*Id.* ¶ 25.)

Tokio Marine argues that it "is entitled to declaratory relief that the Policy does not provide coverage for the Claim." (*Id.* ¶ 30.) And if "the Policy is determined to provide coverage

---

[1] All page numbers refer to the page identification number generated by the Court's electronic docketing system.

for the Claim" Tokio Marine argues that a provision of the Policy, "the Contamination Exclusion

Endorsement[,] … should be reformed so as to reflect the parties' actual agreement that the

Policy should not provide coverage for the historical pollutants allegedly found at the Property."

(*Id.* ¶ 10[2]). Tokio Marine notes that the reformation of contract claim "is a contingent claim that

need not be decided if judgment is granted for Tokio Marine with respect to Count I." (*Id.* ¶ 36.)

## II. LAW AND ANALYSIS

### A.      Standard of Review

The Sixth Circuit applies a four-pronged test to determine whether to grant motions to

compel arbitration:

> first, [the court] must determine whether the parties agreed to arbitrate; second,
> [the court] must determine the scope of that agreement; third, if federal statutory
> claims are asserted, [the court] must consider whether Congress intended those
> claims to be non-arbitrable; and fourth, if the court concludes that some, but not
> all, of the claims in the action are subject to arbitration, it must determine whether
> to stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider,* 228 F.3d 709, 714 (6th Cir. 2000).

### B.      Undisputed Issues

South Chicago argues, and Tokio Marine does not dispute, that the first and third prongs

of the test in *Stout* are satisfied. (Mot. at 33–35; *see* Opp'n at 110.) The parties agreed to arbitrate

because "the Policy clearly and unambiguously provides that '[a]ny dispute, disagreement, or

controversy [sic] arises out of the formation, interpretation, alleged breach, termination, or

invalidity of this policy, or as to any other issue regarding the respective duties and

responsibilities of us or any **insured** regarding this policy, shall be resolved through binding

---

[2] Due to an apparent typographical error, the complaint contains two paragraphs numbered "10". The Court refers to the ¶ 10 that appears on page identification number 2.

arbitration.'" (Mot. at 33 (quoting Policy at 75 (emphasis in original)).) And the third prong is inapplicable because the complaint "does not contain any federal statutory claims[.]" (*Id.* at 35.)

Similarly, South Chicago argues, and Tokio Marine does not dispute, that the second prong is satisfied with respect to Tokio Marine's claim for declaratory judgment—that the claim is within the scope of the Policy's arbitration clause. (Mot. at 34; *see* Opp'n at 110.) "Declaratory [j]udgment that the Policy does not provide coverage for South Chicago's Claim, is most certainly a 'dispute, disagreement, or controversy' regarding the 'interpretation' of the Policy and/or an 'issue regarding the respective duties and responsibilities of us … regarding this policy.'" (Mot. at 34.)

### C.    Disputed Issues

The only disputed issues in the case are whether Tokio Marine's second cause of action for reformation of contract is within the scope of the Policy's arbitration clause, and depending on the Court's decision as to that issue, whether the case should be dismissed or stayed.

#### 1.    Agreement to Arbitrate Arbitrability

The parties dispute what "reformation" is. South Chicago contends reformation "is a 'dispute, disagreement, or controversy' regarding the 'formation' or 'interpretation' of the policy, and/or an 'issue regarding the respective duties and responsibilities of us . . . regarding this policy.'" (Mot. at 34.) Tokio Marine argues "[r]eformation addresses whether the contract, as formed, reflects the mutual intent of the parties[,]" and is distinct from formation and interpretation. (Opp'n at 112.)

And the parties dispute the correct standard for when an arbitrator may reform a contract. South Chicago argues that absent an express provision that the arbitrator may not reform the

contract, he may do so. (Reply at 116.) Conversely, Tokio Marine argues that absent an express provision that the arbitrator may reform the contract, he may not do so.[3] (Opp'n at 111.) The Court need not address either dispute because, as discussed more thoroughly below, "the parties agreed to arbitrate the issue of arbitrability." (Reply at 115–16.)

"[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, —U.S.—, 139 S. Ct. 524, 530, 202 L. Ed. 2d 480 (2019) (internal citation omitted). Rather, "'courts must respect the parties' decision as embodied in the contract' and refer all arbitrability questions to arbitration." *McGee v. Armstrong*, 941 F.3d 859, 866 (6th Cir. 2019) (quoting *Henry Schein, Inc.*, 139 S. Ct. at 531). That is because "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc.*, 139 S. Ct. at 529 (internal quotation omitted). The question, then, is whether the arbitration agreement contained such a delegation provision. *See McGee*, 941 F.3d at 867 ("[B]ecause the parties delegated the threshold arbitrability question to an arbitrator, the District Court did not err in referring the contested

---

[3] Tokio Marine's reliance on *Printing Indus. Ass'n of N. Ohio, Inc. v. Int'l Printing and Graphic Commc'ns Union Local No. 56*, 578 F. Supp. 555 (N.D. Ohio 1983) to support its position that an arbitrator may never reform a contract is misplaced. In *Printing Indus.*, the collective bargaining agreement's arbitration provision expressly prohibited an arbitrator from reforming the contract: "The arbitrator will not have the authority to render a decision which will add to, subtract from, or modify the specific provisions on [sic] this contract." *Id.* at 557. Tokio Marine points to no such provision in the Policy's arbitration agreement. Moreover, the Ninth Circuit recently upheld an arbitrator's decision to reform a contract containing a similar provision, finding that "the arbitrator was authorized to [reform the contract] upon finding the parties were mutually mistaken about the terms they agreed to[,]" despite a no-add provision in the contract that prohibited the arbitrator from "detract[ing] from or alter[ing] in any way the provisions of [the contract]." *ASARCO LLC v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC,* 910 F.3d 485, 489, 494 (9th Cir. 2018), *cert. denied,* 140 S. Ct. 111, 205 L. Ed. 2d 31 (2019).

claims to arbitration.") (internal quotation omitted).

The Sixth Circuit's recent holding in *Blanton v. Domino's Pizza Franchising LLC* is directly on point. 962 F.3d 842 (6th Cir. 2020). In *Blanton,* the Sixth Circuit held that a contract which expressly incorporates the AAA Rules, such that the arbitration is to be governed by those rules, contains "clear and unmistakable" evidence that the parties agreed to arbitrate arbitrability. *Blanton,* 962 F.3d at 844–46 (record quotation and citation omitted). The court relied on R-6(a) of the AAA's Rules for the Resolution of Employment, which provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." *Id.* at 845 (record quotation and citation omitted); *see also Blanton v. Domino's Pizza Franchising LLC,* No. 18-cv-13207, 2019 WL 5543027, at *5 (E.D. Mich. Oct. 25, 2019).

Here, just as in *Blanton*, the arbitration agreement provides that "arbitration will be conducted in accordance with the rules of the … AAA[.]" (Policy at 75.) The AAA Rules include R-7(a), which similar to R-6(a), provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." American Arbitration Association, *Commercial Arbitration Rules and Mediation Procedures*, 13 (Oct. 1, 2013) https://www.adr.org/sites/default/files/CommercialRules_Web.pdf.

The parties' arguments about whether reformation is a "dispute, disagreement, or controversy aris[ing] out of the formation [or] interpretation" of the Policy concerns the scope of the arbitration agreement, which is within the arbitrator's power. *Id.* And the parties' arguments about whether a claim for reformation of contract is arbitrable are "objection[s] with respect to

6

… the arbitrability of a[] claim[,]" which is also within the arbitrator's power. *Id.* Therefore, the question of whether Tokio Marine's reformation of contract claim is within the scope of the arbitration agreement is itself arbitrable.

### 2.    Stay or Dismiss

Tokio Marine requests that the Court stay the proceedings pending arbitration. (Opp'n at 112.) South Chicago contends that, since both counts are subject to arbitration, the case should be dismissed. (Mot. at 35.)

While the FAA "provides for a stay of proceedings when an issue is referable to arbitration[,]" *Javitch v. First Union Sec., Inc.,* 315 F.3d 619, 624 (6th Cir. 2003) (citing 9 U.S.C. §§ 3, 4), "litigation in which all claims are referred to arbitration may be dismissed." *Hensel v. Cargill, Inc.*, 198 F.3d 245 (table), 1999 WL 993775, at *4 (6th Cir. Oct. 19, 1999) (citations omitted); *see also Ozormoor v. T-Mobile USA, Inc*., 354 F. App'x 972, 975 (6th Cir. 2009) ("[Plaintiff] challenges the dismissal of his suit, asserting that 9 U.S.C. § 3 requires district courts to stay suits pending arbitration rather than dismiss them. We have already rejected that argument."); *Integrated Aircraft Sys., Inc. v. Porvair Filtration Grp., LTD*, No. 5:12-cv-493, 2012 WL 3263516, at *1 (N.D. Ohio Aug. 9, 2012) ("In cases where all claims are referred to arbitration, the case may be dismissed rather than merely stayed").

The same holds true where the parties have agreed to arbitrate the question of arbitrability. In *Blanton*, for example, the Sixth Circuit affirmed the district court's order dismissing the case, rather than staying the action pending arbitration, after the court referred claims to an arbitrator to determine their arbitrability. *Blanton,* 2019 WL 5543027, at *6, *aff'd*, 962 F.3d 842 (6th Cir. 2020); *see, e.g., Great Am. Ins. Co. v. Johnson Controls, Inc.*, No. 1:20-

cv-96, 2020 WL 4569126, at *9–10 (S.D. Ohio Aug. 7, 2020) (compelling arbitration to determine the arbitrability of a claim and dismissing, rather than staying, the civil action).

Accordingly, since the declaratory judgment claim is subject to arbitration and the reformation of contract claim is subject to arbitration to determine arbitrability, the Court will dismiss the action.

## III. CONCLUSION

South Chicago's motion to compel arbitration is GRANTED, and this case is DISMISSED WITHOUT PREJUDICE.

**IT IS SO ORDERED**.


Dated: October 2, 2020

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**